J-S15011-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: B.C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: A.L.S., JR., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 339 EDA 2026 |

Appeal from the Order Entered December 19, 2025
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s):  CP-39-DP-0000171-2024

BEFORE:   OLSON, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OLSON, J.:                    **FILED JULY 15, 2026**

Appellant, A.L.S., Jr., (Father) appeals *pro se* from an order entered on December 19, 2025, that denied his request for *nunc pro tunc* relief that would allow him to file an out-of-time appeal challenging an earlier dispositional order.[1]  We affirm.

The trial court briefly summarized the facts of this case as follows:

This case began with an application for emergency custody, dated December 31, 2024, [which stated] that on December 9, 2024, [Lehigh County Office of Children and Youth Services (LCOCYS)] received a Child Protective Services (CPS) referral alleging [E.C.,

---

[*] Former Justice specially assigned to the Superior Court.

[1] More specifically, as we shall explain in greater detail below, Father sought leave to file an untimely appeal from a prior dispositional order and, within the scope of that appeal, planned to challenge the trial court's dependency adjudication and placement determination with regard to his biological daughter, B.C., born in September 2010, (Child).

Child's biological mother (Mother)[2]] was causing bodily harm to [] Child. On December 30, 2024, LCOCYS received an additional referral alleging [] Child did not feel safe living with Mother at Mother's residence in Breingsville, Lehigh County. LCOCYS attempted to check on the welfare of [] Child at Mother's residence on December 30, 2024, but Mother denied entry. When LCOCYS returned the next day with [the] police to do a welfare check on [] Child, Mother eventually allowed Child to step outside the home to speak with LCOCYS personnel. Child stated that she did not feel safe in Mother's home and LCOCYS personnel observed a mark on [] Child's cheek. [] Child further stated Mother scream[ed] at Child, call[ed] her stupid, and threaten[ed] physical harm to [] Child.

As alleged in the application for emergency custody, Mother had unconfirmed mental health issues and a history of substance abuse. Father [was, and still is,] incarcerated at [State Correctional Institute (SCI)] Albion, and was not a placement resource. Accordingly, on December 31, 2024, [the trial court entered] an emergency order directing LCOCYS to take [] Child into custody [] pursuant to Pa.R.J.C.P. 1210. On the same day, [] Child was taken into protective custody.

A shelter care hearing was scheduled for January 2, 2025[.] Father was incarcerated at SCI Albion. Kimbely Gillen, Esq. was appointed to represent him and appeared at the shelter care hearing.

\* \* \*

Because of the unavailability of either parent as a resource, [the trial court entered an order on January 3, 2025 placing] Child [] with a non-relative kinship resource, [M.M.], identified as Child's godmother.

\* \* \*

[After several continuances, and notice to Father, o]n March 10, 2025, the [trial c]ourt convened [an] adjudication hearing. [] Father was not present[, however, Attorney Gillen appeared and stipulated to Child's adjudication as dependent, but argued that Father did not agree about Child's disposition and living arrangement.] Due to his incarceration, [] Father was not

_____

[2] Mother is not a party to this appeal.

available as a placement resource.  As a result, [the trial court]
proceeded with the adjudication hearing and entered an
adjudication order on March 17, 2025.

*          *          *

Father was present for the disposition hearing on March 20, 2025,
as was his court-appointed counsel, Attorney Gillen.  […] Child
was still living with the non-relative kinship resource.  [] Father
objected to that placement on the grounds that the non-relative
kinship resource had been previously investigated by
Northampton County Office of Children and Youth Services.
[Mother and] Child rejected [Father's] proposed resource.  [On
March 25, 2025, the trial court entered a dispositional order for
Child to remain with M.M., but allowed supervised visitation with
Father.]

Trial Court Order, 12/19/2025, at 1-6 (unnecessary capitalization omitted).

On July 14, 2025, the trial court conducted a permanency review

hearing wherein Father and Attorney Gillen were again present.   On July 15,

2025, the trial court entered a permanency review order for Child to remain

with M.M. and for continued supervised visitation with Father.

Thereafter,

[o]n July 18, 2025, [Father] filed a motion to waive counsel and
proceed *pro se*[.]  On July 28, 2025, [Father] filed a [*pro se*] notice
of appeal from [the trial court] orders entered on March 17
[(dependency adjudication)], March 20 [(dispositional order)],
and July 14, 2025 [(permanency review order)].[3]

_____

[3] To be clear, the trial court order entered on March 17, 2025 adjudicated
Child dependent.  On March 20, 2025, the trial court entered a dispositional
order confirming a prior January 3, 2025 emergency placement of Child with
M.M.   The July 15, 2025 order followed a permanency review hearing and
directed Child to remain with M.M.  Of these orders, only the March 20, 2025
dispositional order was final and appealable.  ***See Int. of J.M.***, , 219 A.3d
645, 656 (Pa. Super. 2019), *citing* ***Tameka M.***, 534 A.2d 782, 786 (Pa. Super.
*(Footnote Continued Next Page)*

On July 30, 2025, the [trial] court entered an order scheduling a hearing upon [Father's] motion to waive counsel [and] directed [Father] to file a concise statement of [errors] complained of on appeal [pursuant to Pa.R.A.P. 1925(b)] within 21 days. [On August 4, 2025, the trial court held a hearing on Father's motion to proceed *pro se* and granted relief.]

On August 18, 2025, [Father] filed a [*pro se*] petition for *nunc pro tunc* relief, a motion for subpoena *duces tecum*, and a motion to compel discovery. On August 21, 2025, [the trial court] dismiss[ed Father's requests for relief] on the grounds that by filing an appeal to [this] Court on July 28, 2025, [Father] divested the [trial] court [of] jurisdiction to act upon [the dependency and placement challenges raised within his] petition and motions.

*Id.* at 7.

On September 2, 2025, this Court entered a *per curiam* order quashing Father's July 2025 appeal. More specifically, our Court determined that Father "filed [an] appeal from the July 15, 2025 permanency review order entered in Child's dependency matter that appear[ed] to continue the status *quo* in dependency and therefore d[id] not appear to be appealable." Order of Court, 9/2/2025, at *1, *citing* **In Int. of N.M.,** 186 A.3d 998 (Pa. Super.

---

1987) (*en banc*) ("After reviewing the purposes behind the Juvenile Act, this Court concluded that 'the main cause of action consists of a dependency determination and disposition,' a conclusion this Court believed was reinforced by the fact it is the dispositional order that constitutes a final, appealable order."); **see also Int. of K.P.-I.**, 284 A.3d 928 (Pa. Super. 2022) (non-precedential decision), *citing* **In Interest of C.A.M.**, 399 A.2d 786 (Pa. Super. 1979) ("Based upon the two-step procedure contemplated by the Juvenile Act for declaring a child dependent (*i.e.*, an adjudication followed by a disposition, **see** 42 Pa.C.S. § 6341(c)), this Court has held that it is the dispositional order following a dependency adjudication that is a final appealable order."). Whereas a "permanency order is separable from or collateral to the main cause of action where the only request was to change the placement of the child, but where the placement remained the same." **In Int. of N.M.**, 186 A.3d 998, 1008 (Pa. 2018).

- 4 -

2018) (an order continuing the child's goal and placement are not final or otherwise appealable). This Court further noted Father was given the opportunity "to respond as to why the appeal should not be quashed as interlocutory [but Father] failed to file a response." As such, we quashed Father's July 2025 appeal.

The trial court held another permanency review hearing on October 27, 2025, wherein Father participated *via* videoconference. The trial court entered an order on October 28, 2025 which continued Child's placement, but permitted Father to have unsupervised visitation with Child *via* video.

At issue herein, on November 10, 2025, Father filed a second *pro se* petition for *nunc pro tunc* relief, a motion for subpoena *duces tecum*, and a motion to compel discovery, challenging various aspects of the dependency proceedings, adjudication hearing, and placement disposition of Child. The trial court held a hearing on November 24, 2025. Ultimately, by order entered on December 19, 2025, the trial court determined that Father's most recent filings "[sought to challenge] the same orders [Father] appealed on July 28, 2025, only to have that appeal quashed by the Superior Court" and noted Father "had not sought *nunc pro tunc* relief to allow for consideration" of untimely appeals from the dependency order and/or the dispositional placement of Child and, instead, Father was "asking for [] a second opportunity to appeal matters that were already the subject of an appeal

- 5 -

previously quashed[.]"[4] Trial Court Order, 12/19/2025 , at 9. The trial court generally denied Father relief but appointed standby counsel to provide further consultation and legal advice at subsequent permanency review hearings. The trial court also ordered that LCOCYS provide Father with all prior text messages and communications between himself and Child. *Id.* at 10-12. This appeal resulted.[5]

On appeal *pro se*, Father presents the following issue for our review:

Whether the lower court abused its discretion or government power by deliberate indifference by denying [Father's] petition for *nunc pro tunc* relief on fraudulent grounds; to conceal a conspiracy by [the trial c]ourt, previous appointed counsel, and all agency participants to deny [Father's] parental rights to an adjudication hearing where he timely filed the petition *for nunc pro tunc* relief; because the adjudication of [C]hild as dependent was based on actual fraud and absent the requisite clear and

_____

[4] Recall that the order that Father now challenges on appeal rejected his request for *nunc pro tunc* relief.

[5] On January 22, 2026, Father filed a *pro se* notice of appeal from the order entered December 19, 2025, and included the required concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2). On January 27, 2026, the trial court issued a statement pursuant to Pa.R.A.P. 1925(a). Therein, the trial court largely adopted its decision as set forth in its December 19, 2025 order, but further determined that: (1) Father's Rule 1925 concise statement was vague, merely "include[d] a number of broad conclusory statements concerning fraud and a conspiracy by the [trial c]ourt, and, therefore, all issues were waived; and (2) Father sought "leave to appeal from the March 17, 2025 [adjudication o]rder for a second time, *nunc pro tunc*." Trial Court Rule 1925(a) Statement, at 3; *see also* Trial Court Order, 12/19/2025, at 8-10 (finding Father failed to demonstrate he requested reinstatement of his direct appeal rights *nunc pro tunc* shortly after the direct appeal deadline passed, as the result of non-negligent circumstances, and/or that relief would not prejudice the other parties; Father did not otherwise allege a breakdown or fraud in court operations).

convincing evidence in violation of the Juvenile Act and the United States['] Fourteenth Amendment?

Father's *Pro Se* Brief, at 4.

Here, Father's current challenge centers on the alleged procedural irregularities and the substantive merits of the March 10, 2025 dependency hearing, the subsequent entry of the adjudication order on March 17, 2025, and the dispositional order regarding Child's placement entered on March 25, 2025. ***See id.*** at 6 ("The trial court proceeded with the [] dependency hearing without [F]ather being present. … [Father further] contends that court-appointed counsel did not elicit any relevant testimony, did not present evidence that would have supported [his] position, did not competently question and cross-examine witnesses, agreed to the dependency of [C]hild and stipulations without [Father's] consent, and denied [Father] the right to be present at the hearing without consent or notice."). Moreover, Father continues to challenge Child's placement. ***Id.*** at 9.

However, this Court has stated:

We have long held that the question of appealability of an order goes to the appellate court's jurisdiction. We may raise issues concerning our appellate jurisdiction *sua sponte*. Jurisdiction is a question of law; the appellate standard of review is *de novo*, and the scope of review is plenary.

\* \* \*

To invoke our appellate jurisdiction, Pennsylvania Rule of Appellate Procedure 903 requires that all notices of appeal shall be filed within 30 days after the entry of the order from which the appeal is taken. Because this filing period is jurisdictional in nature, it must be strictly construed and may not be extended as a matter of indulgence or grace.

- 7 -

*Whittaker v. Lu*, 323 A.3d 871, 874–875 (Pa. Super. 2024) (internal citations and quotations omitted); *see also* Pa.R.A.P. 105(b) ("An appellate court for good cause shown may upon application enlarge the time prescribed by these rules or by its order for doing any act, or may permit an act to be done after the expiration of such time, but the court may not enlarge the time for filing a notice of appeal ....").

Here, on January 22, 2026, Father filed a notice of appeal within 30 days from the trial court's December 19, 2025, order that denied his petition for *nunc pro tunc* relief, which sought leave to appeal the prior, March 25, 2025 dependency disposition, a final order. Clearly, however, any appeal from the March 25, 2025 dispositional order was untimely, as Father needed to appeal to this Court no later than April 24, 2025.[6] Instead, as mentioned, Father filed a *nunc pro tunc* request for relief on November 10, 2025, almost seven months after the final dispositional order entered on March 25, 2025. As such, we must consider whether the trial court rightly rejected Father's request for *nunc pro tunc* relief that would allow him to challenge the dependency disposition.

Father's request for *nunc pro tunc* relief is subject to the following standard.

_____

[6] "To appeal from a dependency order, an appellant must file a notice of appeal from the dispositional order within thirty days of the entry of the [challenged] order." *Int. of Z.B.*, -- A.3d --, 2026 WL 1757834, at *3 (Pa. Super. 2026) (citation omitted); *see also* Pa.R.A.P. 903(a).

The standard of review applicable to the denial of an appeal *nunc pro tunc* is whether the trial court abused its discretion. ***Freeman v. Bonner***, 761 A.2d 1193, 1194 (Pa. Super. 2000) (citation omitted). An abuse of discretion is not merely an error of judgment but is found where the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will as shown by the evidence or the record. ***Id.*** at 1194–1195 (citation omitted).

In the usual case, where a party requests permission to file an appeal *nunc pro tunc*, it is because counsel for the appealing party has not timely filed an appeal. That party must therefore show more than mere hardship. Rather, a trial court may grant such an appeal only if the delay in filing is caused by extraordinary circumstances involving fraud or some breakdown in the court's operation through a default of its officers.

***Nagy***, 829 A.2d at 1167 (citations omitted). The petition to file an appeal *nunc pro tunc* must be filed within a reasonable time. ***Nixon v. Nixon***, 198 A. 154, 157 (Pa. 1938); ***Com., Dept. of Transp., Bureau of Driver Licensing v. Emery***, 580 A.2d 909, 912 (Pa. Cmwlth. 1990) (quotation omitted). Moreover, in ***Bass v. Commonwealth Bureau of Corrections, et al.***, 401 A.2d 1133 (Pa 1979), our Supreme Court found that

where an appellant, an appellant's counsel, or an agent of appellant's counsel has failed to file a notice of appeal on time due to non-negligent circumstances, the appellant should not lose his day in court. ***Id.*** at 1135. Therefore, the ***Bass*** Court expanded the limited exceptions for allowing an appeal *nunc pro tunc* to permit such an appeal where the appellant proves that: (1) the appellant's notice of appeal was filed late as a result of non-negligent circumstances,[7] either as they relate to the appellant or the appellant's counsel; (2) the appellant filed the notice of appeal shortly after the expiration date; and (3) the appellee was not prejudiced by the delay. ***See id.*** at 1135–1136 (allowing appellant to appeal *nunc pro tunc* where appeal was filed

_____

[7] ***See Fischer v. UPMC Northwest***, 34 A.3d 115, 120 n.2 (Pa. Super. 2011) (stating *nunc pro tunc relief* in non-negligent circumstances "is meant to apply only in unique and compelling cases in which the appellant [] clearly established that [he or] she attempted to file [a pleading], but unforeseeable [] events precluded [him or] her from actually doing so.") (citation omitted).

four days late because appellant's attorney placed the notice of appeal on the desk of the secretary responsible for ensuring that appeals were timely filed and the secretary became ill and left work, not returning until after the expiration of the period for filing an appeal); *see also Cook v. Unemployment Comp. Bd. of Review*, 671 A.2d 1130, 1132 (Pa. 1996) (granting appeal *nunc pro tunc* where claimant filed appeal four days late because he was hospitalized).

*Criss v. Wise*, 781 A.2d 1156, 1159 (Pa. 2001); *see also Cook*, 671 A.2d at 1131 (observing that *Bass* added the third exception of non-negligent conduct of the appellant's attorney or the attorney's staff to the two previously recognized extraordinary circumstances of fraud or some breakdown in the court's operation through a default of its officers which would allow relief from the jurisdictional appeal period). In *McKeown*, *quoting Cook*, *id.*, on this point, we said:

> [W]here an appeal is not timely because of non-negligent circumstances, either as they relate to appellant or his counsel, and the appeal is filed within a short time after the appellant or his counsel learns of and has an opportunity to address the untimeliness, and the time period which elapses is of very short duration, and appellee is not prejudiced by the delay, the court may allow an appeal *nunc pro tunc*.

*McKeown*, 731 A.2d at 630. Thus, it is clear that, whatever extraordinary circumstance is alleged as the reason for the late filing of the appeal—fraud, breakdown of the court's operation through default of its officers, or non-negligent conduct on the part of appellant, appellant's attorney, or the attorney's staff—the petition to file the appeal *nunc pro tunc* must be filed within a reasonable time after the occurrence of the extraordinary circumstance.

*Amicone v. Rok*, 839 A.2d 1109, 1113–1114 (Pa. Super. 2003) (original footnote and quotation marks omitted; new footnote added) (determining that petitioner was not entitled to *nunc pro tunc* relief where he waited more than four months to file his petition). "If fraud is [alleged] as a basis for *nunc pro tunc* relief, it must be actually established." *Balsavage v. Miller*, 339 A.3d

523, 528, (Pa. Super. 2025) (citation omitted). "[M]erely alleging fraud as a legal conclusion is meaningless if it is not based upon facts which clearly and explicitly constitute such fraud." *Id.* (citation omitted).

In this case, Father baldly claims fraud and a breakdown of the court without any specificity and without actually establishing fraud. As mentioned, the trial court determined that Father "failed to substantiate the grounds for his current request for *nunc pro tunc* relief when what he was asking for is a second opportunity to appeal matters which were already the subject of an appeal previously quashed[.]." Trial Court Order, 12/19/2025, at 9. The record supports this conclusion. Moreover, as set forth above, Father's request for *nunc pro tunc* relief was filed nearly seven months after the time for taking a timely direct appeal, but he has not offered a non-negligent explanation for the delay. As such, Father has not proved an extraordinary circumstance that would support a *nunc pro tunc* appeal, nor has he established that he requested relief within a reasonable time or within a short time after he became aware that the appeal period had expired. Furthermore, the trial court found that the passage of time would prejudice the remaining parties, including Mother, Child and LCOCYS. *Id.* at 10. Additionally, we note that Father has not established that he attempted to file a direct appeal, but unforeseeable events precluded him from doing so. Based upon our standard of review and applicable law, we discern no abuse of discretion or error of law in denying Father's request for *nunc pro tunc* relief.

Finally, we cannot agree that Father's allegations of ineffective assistance of counsel compel a different result. As this Court recently stated in **Interest of K.S.**, 348 A.3d 746 (Pa. Super. 2025) (non-precedential decision)[8]:

> It is well-settled that there exists in parents a right to counsel in dependency cases, which right derives from the Juvenile Act, 42 Pa.C.S.A. § 6337. **In re S.M.**, 614 A.2d 312 (Pa. Super. 1992); **In Matter of J.P.**, 573 A.2d 1057 (Pa. Super. 1990) (*en banc*), *citing* **Interest of DelSignore**, 375 A.2d 803 (Pa. Super. 1977). This right to counsel has also been expressed as a right to effective assistance of counsel, such that the denial of effective assistance is tantamount to having proceeded with no counsel at all. **In re S.M.**, *supra*.

**In re N.B.**, 817 A.2d 530, 535 (Pa. Super. 2003) (footnote omitted).

> In the context of a dependency case, in the exercise of its broad scope of review, an allegation of ineffectiveness of counsel on appeal would result in a review by this Court of the total record with a determination to be made whether on the whole, the parties received a fair hearing, the proof supports the decree by the standard of clear and convincing evidence, and upon review of counsel's alleged ineffectiveness, any failure of his stewardship was the cause of a finding of dependency. Mere assertion of ineffectiveness of counsel is not the basis of a remand or rehearing, and despite a finding of ineffectiveness on one or more aspects of the case, if the result would unlikely have been different regardless of a more perfect stewardship, the decree must stand.

**In Matter of J.P.**, 573 A.2d at 1066.

> Under the criminal standard, in order to prevail on an ineffectiveness of counsel challenge, the appellant must

_____

[8] Non-precedential decisions filed after May 1, 2019, may be cited for their persuasive value. **See** 210 Pa. Code § 65.37.

show that he had a claim of arguable merit, that counsel handled the claim unprofessionally, and that counsel's action caused him prejudice. In the context of a dependency proceeding, before counsel can be deemed ineffective, under the above stated criminal standard, the appellant must make a strong showing of ineffectiveness of counsel. Under this heightened test the parent must come forward with evidence that indicates to a high degree of likelihood that but for an unprofessional error on the part of counsel, the child would not have been found dependent.

*In re K.D.*, 871 A.2d 823, 828 (Pa. Super. 2005) (*quoting In re S.M.*, 614 A2d at 315-316).

This Court has not expressly decided when a parent may first command review of a claim that he has been denied his right to counsel in a dependency proceeding. Our precedent does make clear, however, that a parent's claim that he was essentially denied counsel because of counsel's ineffectiveness at a dependency hearing is capable of vindication in an appeal filed after the entry of a dependency and dispositional order. *In re S.M.*, 614 A.2d at 316; *In Matter of J.P.*, 573 A.2d at 1057.

*In re N.B.*, 817 A.2d at 535 (footnotes omitted); *see also In Matter of J.P.*, 573 A.2d at 1066 ("Procedurally, since a claim of ineffectiveness could only present itself on appeal, and as this would be the first opportunity new counsel would have to make such an allegation, the appellate procedure must lend itself to the process.").

*Int. of K.S.*, 348 A.3d 746, at *7.

While counsel's ineffectiveness within the context of dependency litigation may form the basis for relief on direct appeal, *see In Matter of J.P.*, 573 A.2d at 1066, a claim predicated on counsel's conduct does not support a request for *nunc pro tunc* relief in the absence of a non-negligent explanation for a filing delay. *See Criss*, 781 A.2d at 1159. As such, any suggestion here by Father that the ineffectiveness of counsel supported his November 2025

petition is unavailing. At bottom, Father has not alleged that trial counsel attempted to file a timely appeal but that extraordinary or unforeseen circumstances intervened to prevent such a filing. Thus, while Father's claims of ineffective assistance would otherwise be cognizable in a timely appeal from the trial court's dispositional order, his present failure to allege, much less prove, that some non-negligent conduct on the part of counsel prevented a timely appeal is fatal to his petition for *nunc pro tunc* relief. ***See id***. In the absence of non-negligent conduct on the part of counsel and/or extraordinary or unforeseen circumstances such as a breakdown in judicial operations, ineffective assistance of counsel simply does not serve as a pathway to circumvent the jurisdictionally prescribed appeal period. Based upon our standard of review, the applicable law, and our review of the certified record, there is nothing demonstrating that counsel's performance supports a request for *nunc pro tunc* relief. Accordingly, Father is not entitled to relief.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/15/2026

- 14 -